UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:09-CV-67-F

| | | |
|---|---|---|
| WIDEWATERS VILLAGE COMMUNITY ASSOCIATION, INC., Appellant, | ) ) ) ) | |
| vs. | ) ) | ORDER |
| THEODORE A. HAYWOOD, et al, Appellee. | ) ) ) | |

This matter is before the court upon the appeal by Widewaters Village Community Association, Inc. ("Appellant") from an order of the Bankruptcy Court for the United States District Court for the Eastern District of North Carolina ("Bankruptcy Court"). Appellant asserts that the Bankruptcy Court erred in allowing the Motion to Value Collateral and Determine Status of Liens filed by Theodore A. Haywood and Stacey B. Haywood ("the Appellees") and stripping Appellant's lien.

This court has jurisdiction to hear the appeal from the Bankruptcy Court's orders pursuant to 28 U.S.C. § 158(a). The court reviews the Bankruptcy Court's conclusions of law *de novo* and its findings of fact for clear error. *See In Re Johnson*, 960 F.2d 396, 399 (4th Cir. 1992). For purposes of this appeal, Appellant and Appellees agree that all findings of fact made by the Bankruptcy Court were correct.

## I. PROCEDURAL AND FACTUAL HISTORY

On February 27, 2003, D.R. Horton, Inc., owner of the "Widewaters Subdivision" caused a Declaration of Protective Covenants for Widewaters Village ("the Declaration") to be recorded, in Book 9939, Page 93 of the Wake County Registry. Pursuant to the terms of the Declaration,

all of the property in the Widewaters Subdivision, and all property which might later be made subject to the Declaration, were made subject to the covenants and restrictions contained therein. Appellant is the homeowners association created pursuant to the terms of the Declaration.

The Declaration obligates Appellant to perform numerous services for the entire Widewaters Subdivision, including the operation and maintenance of street lights; the maintenance of all property within the community originally maintained by the declarant, and maintaining the common areas. Additionally, the Declaration provides that Appellant may impose assessments to be paid by the owners of property subject to the Declaration. The assessments may be imposed after a budget is presented and the owners have met and voted, and an assessment must be levied equally on all similarly situated properties. The Declaration also provides that all sums assessed against any property shall be secured by a lien in favor of the Appellant, and if any assessments are not paid within thirty (30) days of the assessment, Appellant may file a lien and institute suit or foreclose its lien.

On November 23, 2005, D.R. Horton, Inc., conveyed to Appellees by North Carolina General Warranty Deed, the property identified at 1010 Delta River Way, Knightdale, North Carolina, located in the "Widewaters Subdivision" ("the Property"). Appellees took the property subject to the Declaration.

On September 15, 2008, Appellees filed a petition for relief under chapter 13 of the Bankruptcy Code. The parties agree that at the time the petition was filed, the Property was valued at $285,000.00. Ocwen Mortgage had a first and second deed of trust on the Property, in the amounts of $250,989.46 and $65,081.67, respectively. Sallie Mae held a third deed of trust in the amount of $18,500.00, and Appellant held a lien for unpaid homeowners association

2

assessments in the amount of $2,383.19. On November 5, 2008, Appellees filed a Motion to Value Collateral and Determine Status of the Claims. In the Motion, Appellees, who are retaining the Property as their primary residence, sought an entry of an order that Appellant's pre-petition claim for unpaid homeowners association dues was wholly unsecured, and that a lien filed by Appellant to secure payment of the dues should be stripped.

The Bankruptcy Court held a hearing on the Motion on December 2, 2008, and on December 5, 2008, issued an Order Allowing Motion to Value Collateral and Determine Status of Liens [DE-1-1]. The Bankruptcy Court, relying on its decision in *In re Kidd*, 161 B.R. 769 (Bankr. E.D.N.C. 1993), found that Appellant's pre-petition claims were unsecured, and therefore the lien securing the claims could be avoided. *See* December 2, 2008 Order [DE-1-1] at p. 2. The Bankruptcy Court also rejected Appellant's equitable arguments. *Id.* Appellant thereafter appealed.

## II. DISCUSSION

Appellant argues that the Bankruptcy Court erred in finding Appellant's pre-petition claims unsecured and in stripping its lien because 11 U.S.C. § 1332(b)(2) prohibits the modification of claims secured by an interest in real property that is the debtor's principal residence, and that the Bankruptcy Court erred by failing to find that various equitable doctrines estopped Appellees from seeking to strip the lien. This court will discuss both contentions in turn.

### A. "Stripping Off" of completely unsecured liens

Appellant's first contention concerns the interaction between two provisions of the Bankruptcy Code, 11 U.S.C. § 506 and 11 U.S.C. § 1322(b)(2), and requires this court to decide

3

whether, under § 1322(b)(2), chapter 13 debtors can void a lien on their residential property if there is insufficient equity to cover any portion of that lien.

For purposes of this appeal, the first relevant provision of the Bankruptcy Code, 11 U.S.C. § 506(a), which applies to all bankruptcies under all chapters, provides:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a *secured claim* to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an *unsecured claim* to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim.

11 U.S.C. § 506(a)(1)(emphasis added). Thus, § 506(a) sorts creditors' allowed claims against the debtor into secured and unsecured claims. The second relevant provision, 11 U.S.C. § 1322(b)(2), applies only to Chapter 13 bankruptcies, and states that a debtor's Chapter 13 plan may

> modify the rights of holders of secured claims, other than a claim secured only be a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims.

11 U.S.C. § 1322(b)(2). Appellant argues that its lien is a security interest in Appellee's principal residence, is therefore protected by this anti-modification provision. Appellant argues that the Bankruptcy Court erred by failing to correctly apply § 1322(b)(2) and stripping Appellant's lien.

In finding that Appellant's lien was unsecured and "stripping off" the lien, the Bankruptcy Court relied on its own decision in *In re Kidd*, 161 B.R. 769 (Bankr. E.D.N.C. 1993). In *In re Kidd*, the debtors owned a home encumbered by two mortgages, and the amount owed on the first mortgage exceeded the value of the property. 161 B.R. at 770. The bankruptcy court

determined that the holder of the second mortgage had an unsecured claim pursuant to § 506(a), and as such § 1322(b)(2)'s prohibition against modifying claims secured by a security interest in the debtor's principal residence was inapplicable. *Id.* at 770-71. The court determined that the United States Supreme Court's decision in *Nobelman v. American Savings Bank*, 508 U.S. 324 (1993) was distinguishable, because the holder of second mortgage had a completely unsecured claim, as opposed to the partially secured claim at issue in *Nobleman*.

In *Nobelman*, the Court held that § 1322(b)'s anti-modification provision prohibits the bifurcation, or "strip down," in a chapter 13 case of a single undersecured homestead lien into secured and unsecured components. The court reasoned that despite the application of § 506(a) to the claim, and the consequential reduction in the amount of the claim, the creditor was still a holder of a secured claim. *Nobelman*, 508 U.S. at 328-29. In other words, when a creditor's lien at least is partially secured, § 506(a) cannot operate to eliminate the creditor's rights in the unsecured claim component. *Id.*

Appellant in this case argues that *In re Kidd* was wrongly decided, and that the proper analysis begins with § 1322(b)(2) and a determination as to whether or not a creditor holds a lien secured by the debtor's principal residence. According to Appellant, if the creditor holds a lien secured by the debtor's residence the analysis ends there and the creditor's rights may not be modified, regardless of the valuation of the property pursuant to § 506(a).

The court disagrees, and concludes that the proper starting point in the analysis is § 506(a), and a determination of whether the claimant's security interest has any actual value. If the security interest lacks *any* value, the creditor possesses a wholly unsecured lien which is not protected by the anti-modification clause of § 1322(b). Although there is a split in authority on

5

the issue, and the Fourth Circuit has yet to rule on the precise question, every Circuit Court of Appeals to have considered the issue has reached the same conclusion. *See Zimmer v. PSP Lending Corp (In re Zimmer)*, 313 F.3d 1220 (9th Cir. 2002); *Lane v. W. Interstate Bancorp (In re Lane)*, 280 F.3d 663 (6th Cir. 2002)[1]; *Tanner v. FirstPlus Fin., Inc. (In re Tanner)*, 217 F.3d 1357 (11th Cir. 2000); *Bartee v. Tara Colony Homeowners Ass'n., et al (In re Bartee)*, 212 F.3d 277 (5th Cir. 2000); *McDonald v. Master Fin., Inc. (In re McDonald)*, 205 F.3d 660 (3d Cir. 2000). This court finds the reasoning set forth in these opinions to be persuasive.

Consequently, because the first and second liens on the Property exceed the equity remaining in the home, Appellant's lien is wholly unsecured. As a result, the Bankruptcy Court did not err in concluding that Appellant's interests may be modified pursuant to § 1322(b).

## B. Equitable Doctrines

Appellant also argues that the Bankruptcy Court erred by failing to find that Appellees were estopped from treating Appellant's pre-petition claim as unsecured and seeking to strip

---

[1] The Sixth Circuit in *Lane* cogently stated "the message" of § 1322 when "read in light of the *Nobelman* holding" in the following manner:
- Section 1332(b)(2) prohibits modification of a rights of a holder of a secured claim if the security consists of a lien on the debtor's principal residence;
- Section 1322 permits modification of the rights of an unsecured claimholder;
- Whether a lien claimant is the holder of a "secured claim" or an "unsecured claim" depends, thanks to § 506(a), on whether the claim's security interest has any actual "value;"
- If a claimant's lien on the debtor's homestead has a positive value, no matter how small in relation to the total claim, the claimant holds a "secured claim" and the claimant's contractual rights under the loan documents are not subject to modification by the Chapter 13 plan;
- If a claimant's lien on the debtor's homestead has no value at all, on the other hand, the claimant holds an "unsecured claim" and the claimant's contractual rights are subject to modification by the plan.

280 F.3d at 669.

6

Appellant's lien. Specifically, Appellant argues that Appellees are barred by the equitable doctrines of quasi-estoppel and estoppel by covenant from seeking to strip Appellant's lien.

At the outset, the court notes that the status of Appellant's claim as secured or wholly unsecured appears to have little to do with Appellees' retention of their primary residence and estoppel principals, and instead is determined in accordance with 11 U.S.C. § 506(a). Again, that statute provides:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a *secured claim* to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an *unsecured claim* to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim.

11 U.S.C. § 506(a)(1)(emphasis added). It is the application of this statute that determines whether Appellant's claim is secured, or unsecured, within the meaning of the Bankruptcy Code. Consequently, the court views the issue presented to be this: are Appellees estopped from seeking to "strip off" the Appellant's lien, even if Appellant's claim is unsecured under the Bankruptcy Code?

In response to this question, Appellees contend that the equitable doctrines advanced by Appellant must be rejected as "contrary to the explicit provisions of the Bankruptcy Code." Appellees' Brief [DE-16] at p. 12. At first glance, it may appear easy to reject Appellees' contention; after all, bankruptcy courts possess a degree of equitable power by virtue of 11 U.S.C. § 105(a), which provides that bankruptcy courts "may issue any order, process or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. *But see* Alan M. Ahart, *The Limited Scope of Implied Powers of a Bankruptcy Judge: A Statutory*

7

*Court of Bankruptcy, Not a Court of Equity*, Am. Bankr. L.J. 79, 25-26 (2005)(noting that § 105(a) "does not mention equity or equitable power"). However, as the Fourth Circuit has observed:

> [T]he Supreme Court has made clear that "whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code." *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988). Thus, the equitable powers that a bankruptcy court possesses "are not a license . . . to disregard the clear language and meaning of the bankruptcy statutes and rules." *Official Comm. of Equity Sec. Holders v. Mabye*, 832 F.2d 299, 302 (4th Cir. 1987); *see* 2 *Collier on Bankruptcy* ¶ 105.01[2] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. Rev. 2005)("Section 105 does not allow the bankruptcy court to override the explicit mandates of other sections of the Bankruptcy Code . . . .").

*In re Coleman*, 426 F.3d 719, 726 (4th Cir. 2005). Accordingly, where "the plain language" of 11 U.S.C. § 544(b) provided that a debtor "may avoid" certain transfers or obligations, the Fourth Circuit held that the bankruptcy court's ruling limiting the debtor's ability to avoid certain deeds of trusts was in error. *Id.* at 726-27. As the Fourth Circuit explained, the bankruptcy court could not use its equitable powers to limit the avoidance of the deeds of trust because such a ruling "clearly infringes Debtor's right, unambiguously conferred by the Code, to nullify the grant of the deeds." *Id.*

Similarly, here the Bankruptcy Code provides that a debtor "may . . . modify the rights of holders of unsecured claims." 11 U.S.C. § 1322(b)(2). The court does not believe it has the authority to apply either of the equitable doctrines advanced by Appellant to the facts of this case and prevent Appellees from exercising their right to strip the Appellant's lien.

Specifically, the court concludes that the application of quasi-estoppel to the facts of this case conflicts with a debtor's right to modify the rights of holders of unsecured claims. As the

8

North Carolina Supreme Court has explained, "[u]nder a quasi-estoppel theory, a party who accepts a transaction or instrument and then accepts benefits under it may be estopped to take a later position inconsistent with the prior acceptance of that same transaction or instrument." *Whitacre P'ship v. Biosignia, Inc.*, 358 N.C. 1, 18, 591 S.E.2d 870, 881-82 (2004)(citing *Brooks v. Hackney*, 329 N.C. 166, 173, 404 S.E.2d 854, 859 (1991); *Pure Oil Co. v. Baars*, 224 N.C. 612, 615, 31 S.E.2d 854, 856 (1944); 11A Strong's North Carolina Index 4th *Estoppel* § 13 (2001)). Quasi-estoppel " 'is directly grounded . . . upon a party's acquiescence or acceptance of payments or benefits, by virtue of which that party is thereafter prevented from maintaining a position inconsistent with those acts.' " *Id.* 19, 591 S.E.2d at 882 (quoting *Godley v. Pitt County*, 306 N.C. 357, 361, 293 S.E.2d 167, 170 (1982)). Here, Appellant argues that by retaining the Property, Appellees effectively have assumed the contract embodied in the Declaration. According to Appellants, by retaining the Property and assuming the contract in the Declaration, Appellees cannot disavow other portions of it, including the portions relating to the filing of liens for unpaid assessments.

It cannot be disputed that when Appellees originally purchased the Property, they were deemed to have "accepted" the Declaration. Indeed, it would be impossible to purchase the Property without accepting the benefits, and the burdens, included in the Declaration. The court cannot agree, however, that by merely retaining the Property the Appellees are deemed to have "accepted" *again* the Declaration. There was but one "acceptance" of the Declaration, and that was when Appellees purchased the property. It is true that normally, having "accepted" the Declaration, Appellees should not be able to avoid their obligations under it. However, bankruptcy removes the facts from the "normal" realm and into the exclusive realm of the

9

Bankruptcy Code. Under the explicit provisions of the Bankruptcy Code, Appellees have the right to modify the rights of holders of unsecured claims. 11 U.S.C. § 1322(b)(2). Like Appellant, many holders of claims are parties to a contract that was accepted by a debtor, only to have the debtor later take "a position inconsistent with" the contract and file for bankruptcy and seek to avoid a lien and/or some of the payment owed. Under the Bankruptcy Code, this "unjust" result sometimes happens.

Nonetheless, Appellant argues that it is different from the average creditor because the Declaration should be analogized to an executory contract. *See* 11 U.S.C. § 365. The fact remains, however, that the Declaration is *not* an executory contract. *See e.g., In re Beeter*, 173 B.R. 108, 115-16 (Bankr. W.D.Tex. 1994)(concluding a declaration covenant is not an executory contract because it cannot be "rejected" and it runs with the land). The Bankruptcy Court did not err by declining to use its equitable powers under § 105 to create, by analogy, another category of holders of claims in an effort to limit Appellees' right to strip Appellant's lien. *See* Ahart, *supra*, at 32 ("Since a bankruptcy court is not a court of equity, a bankruptcy judge ought not to resort to non-statutory equitable principles, defenses, doctrines or remedies to excuse compliance with or to override provision(s) of the Bankruptcy Code or rules.").

Nor can this court find that the Bankruptcy Court erred by failing to apply the doctrine of estoppel by covenant. Appellant cites *David Bush v. James I Person ex ux.*, 59 U.S. 82 (1855) as support for the following proposition:

> Appellant argues that the obligation to pay assessments, and Appellant's Lien, are covenants that run with the land; that Debtors may be released by the Bankruptcy Discharge (if entered) from any pre-petition obligations; but that covenants that run with the land (or estoppels running with the land) are not so discharged and

10

that Appellant's Lien, as created by the Declaration, remains attached to the Property.

Appellant's Brief [DE-10] at p. 14. A close reading of *David Bush*, however, reveals that the Supreme Court was considering the effect of a discharge under the Bankruptcy Act of 1841, ch. 9, 5 Stat. 440, on a mortgage. The Supreme Court reviewed the Bankruptcy Act of 1841, and noted:

> The second section of the act contains that proviso: "That nothing in this act contained shall be construed to annul, destroy, or impair any lawful rights of married women, or minors, or any liens, mortgages, or other securities on property, real or personal, which may be valid by the laws of the States respectively, and which are not inconsistent with the provisions of the second and fifth sections of this act." There does not appear to have been anything in this mortgage inconsistent with those sections; and it is not denied that he mortgage itself, considered simply as a conveyance of the land, remained unaffected by the act.
>
> It is therefore obvious, that though the bankrupt, personally, was released by the act, the debt due from the land continued undischarged. . . .
>
> The intention of the legislature to carry out this distinction between the personal liability of the debtor and the liability of the land, and to preserve the latter in full force, unaffected by the discharge of the debtor, is clearly declared by the act. The act says, in so many words, that a mortgage, valid by the law of the State, shall not be impaired by any thing in the act.

*Id.* at 84.

Under the chapter 13 of the current Bankruptcy Code, however, as this court already has discussed, a debtor *does* have the right to strip the lien of a holder of an unsecured claim. 11 U.S.C. § 1322(b)(2). The court therefore finds Appellant's reliance on *David Bush* to be misplaced.

Accordingly, the Bankruptcy Court did not err in failing to conclude that Appellees were estopped from seeking to strip Appellant's lien.

11

### III. CONCLUSION

For the foregoing reasons, the December 5, 2008 Order Allowing Motion to Value Collateral and Determine Status of Liens is AFFIRMED.

SO ORDERED.

This the 2nd day of July, 2010.

                                                             */s/ James C. Fox*
                                                             JAMES C. FOX
                                                             Senior United States District Judge